**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN S. BROWN | : | |
| | : | |
| Appellant | : | No. 142 WDA 2025 |

Appeal from the Order Entered January 7, 2025
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000542-2019

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED:  June 16, 2025**

Kevin S. Brown appeals from the order denying his petition to defer service of his sentence of confinement and order his release to hospice care. He alleges that the court erred in denying his petition and in not holding a hearing on the matter. We affirm.

In May 2021, a jury convicted Brown of involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, and two counts each of indecent assault and corruption of minors.[1] The trial court sentenced Brown to an aggregate term of 12 to 24 years' incarceration, followed by three years of reporting probation. The court also determined Brown to be a sexually violent predator ("SVP"). Brown appealed, and we affirmed his judgment of sentence but remanded for correction of the grading of a single conviction,

---

[1] 18 Pa.C.S.A. §§ 3123(b), 3124.1, 3122.1(b), 3126(a)(7), and 6301(a)(1)(i), (ii), respectively.

without resentencing. ***See Commonwealth v. Brown***, No. 1490 WDA 2023, 2024 WL 5205587, at *1 (Pa.Super. filed Dec. 24, 2024) (unpublished mem.).

Brown filed the instant Emergency Petition to be Released Pursuant to 42 Pa.C.S.A. § 9777, in November 2024. Section 9777 provides, in relevant part, and as explained in greater detail below, for an inmate's release in certain circumstances to receive hospice care. Brown asked the court to permit him to be "release[d] to hospice care due to his terminal condition of stage III non-small cell lung cancer with metastases to brain bone, and life expectancy of less than six months[.]" Emergency Petition at 1. He asserted that a hospice facility, UPMC Family Hospice, agreed to place him under their care "for hospice care at the home of his wife[.]" ***Id.*** at 3, ¶ 4. He sought release to his wife's home, which he would not be permitted to leave "without prior permission being granted by the Court, with the exception of off-site medical care visits as deemed appropriate by UPMC Family Hospice and/or religious services or caregiver emergencies." ***Id.*** at 4, ¶ 12.

In support, Brown attached a summary of medical treatment, dated August 19, 2024, with a comment from a doctor that his life expectancy was less than six months. ***See id.*** at Exhibit A ("Medical Summary"), at 4. The summary identified Brown's diagnosis as "Stage III non-small cell lung cancer with metastases to brain bone" and stated that Brown had "decided not to undergo any further cancer treatment, and to opt for comfort care." ***Id.*** at 1. Brown also attached a copy of an email from the clinical manager at UPMC

Family Hospice stating that the facility would accept Brown as a patient. *Id.* at Exhibit C ("Hospice Email").

The trial court denied Brown's petition. It determined that Brown had not met the requirements for a Section 9777 release. It found that Brown did not establish a *prima facie* case that his placement in hospice would not pose an undue risk of escape or danger to the community. It also found that he had failed to meet the requirement that a petition for Section 9777 release make certain averments. *See* 42 Pa.C.S.A. § 9777(e). The court concluded that it would pose an undue risk of escape and a danger to the community to have Brown released to his wife's home. It pointed out that his home does not fall within the definition of a licensed hospice care under the statute and "[i]t would be difficult for [Brown] to demonstrate that his wife [would] monitor him and his whereabouts continuously." Opinion and Order, filed 1/7/25, at 5.

Brown moved for reconsideration, stating that he would now stay at the home of a family friend, instead of his wife's home. *See* Motion of the Petitioner, Kevin S. Brown, for Reconsideration of the Denial, Without Any Hearing, of His Emergency Petition to be Released Pursuant to 42 Pa.C.S.A. 9777, filed 1/17/25, at 3, ¶13. He also asserted that because of his illness he would not be a danger and that Section 9777 permits a home to be the place for hospice care. *See id.* at 4, ¶¶ 15, 17.

The trial court denied reconsideration. This timely appeal followed. The court ordered Brown to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Brown filed a nine-page statement.

*See* 1925(B) Statement of the Appellant/Defendant, Kevin S. Brown, filed 2/11/25.

Brown raises the following questions:

1. Did the Honorable John H. Pavlock err in not providing a hearing on the issues of mercy release pursuant to 42 Pa. C.S.A. [§] 9777? Did he further err in relying on [sic] case of **Commonwealth v. Folk**[,] 40 A.3d 169 (Pa. Super. Ct., 2012) as his basis for not providing a hearing since **Folk** involved a sentencing and no hospice, medical reports, etc. were presented? Did Judge Pavlock deny fundamental due process and abuse his discretion, by unfairly not providing Mr. Brown a timely hearing on his mercy release due to his terminal lung cancer, which is metastasized to his brain and bones, where the doctors have estimated his life expectancy is less than six months? Was there a gross abuse of discretion in not providing a hearing and relying on the **Folk** case, since the **Folk** case had entirely different facts? Further, did Judge Pavlock err in not providing a hearing since Mr. Stretton was prepared to present medical testimony that Mr. Brown was terminally ill, that the illness was lung cancer and had metastasized to his bones and brain, he is only about 90 pounds now, he has less than a few months, if not weeks, to live, he is not ambulatory, and the hospice was there to provide appropriate care, and the prison system has no licensed hospice? Further, did Judge Pavlock ignore the letter from the Department of Corrections indicating that Mr. Brown had met the medical conditions for release? Did Judge Pavlock grievously err in violating Mr. Brown's fundamental right to due process under the Fourteenth Amendment of the United States Constitution by not providing a timely hearing and denying Mr. Brown his right under 42 Pa. C.S.A. [§] 9777(A)(2) to have a hearing?

   A. Did Judge Pavlock err in suggesting the pleadings filed by Mr. Stretton for the mercy release were inadequate when these pleadings are the same as Mr. Stretton has filed in the last 30 to 40 Mercy Release Petitions that he has filed for the Prison Society on behalf of inmates, and the Petition

clearly covers with detail all aspects of 42 Pa. C.S.A. [§] 9777?

B. Did Judge Pavlock err in suggesting a home location for hospice care and supervision was not sufficient, when in fact that is allowed by 42 Pa.C.S.A. [§] 9777?

C. Did Judge Pavlock err since there was overwhelming and sufficient evidence to grant mercy release in this case, and there was a gross abuse of discretion not to do so, and further a gross abuse of discretion to not to [sic] have a hearing, and further a gross abuse of discretion since Judge Pavlock delayed almost two months before he issued a decision, knowing the terminal nature of Mr. Brown's illness? --- Judge Pavlock, without a hearing, denied the mercy release and found the conditions were not met, even though he held no hearing and the evidence was overwhelming for a mercy release.

Brown's Br. at 6-8.

The trial court finds that Brown has waived his appellate issues because his Rule 1925(b) statement is redundant, lengthy, and not concise. **See** Rule 1925(a) Opinion (1925(a) Op.), filed 3/31/25, at 3. The court further states that "the [c]oncise statement is so broad and rambling, it leaves this court guessing as to the precise issues [Brown] is raising and [to] be addressed on appeal." **Id.**

We decline to find waiver. While Brown's statement is long and not concise, in the context of this litigation, it is readily understandable that he wanted to challenge the court's failure to hold a hearing and its conclusion that his petition did not meet the pleading requirements of Section 9777. Indeed, the trial court discerned those issues from Brown's 1925(b) statement

and wrote an opinion addressing them. *See Commonwealth v. Rogers*, 250 A.3d 1209, 1224 (Pa. 2021) (reversing Superior Court's finding of waiver, concluding Rule 1925(b) statement was "readily understandable from context"); Pa.R.A.P. 1925, comment ("Neither the number of issues raised nor the length of the Statement alone is enough to find that a Statement is vague or non-concise enough to constitute waiver").

We review the denial of a petition for a Section 9777 transfer for an abuse of discretion. *See Commonwealth v. Folk*, 40 A.3d 169, 173 (Pa.Super. 2012). An abuse of discretion occurs when the court's judgment is "manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record" or where the court overrides or misapplies the law. *Commonwealth v. Yanovitsky*, 319 A.3d 522, 529 (Pa.Super. 2024) (citation omitted).

Although Brown lists four issues in his Statement of Questions Presented, the argument section of his brief contains only a single argument section addressing all four claims collectively. His doing so violates Pa.R.A.P. 2119(a). That rule requires that the argument section "be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). The failure to abide by the briefing rules risks a finding of waiver. However, we again decline to find waiver, in this instance because the Rule 2119 violation here does not impede meaningful appellate review. *See Lemenestrel v. Warden*, 964 A.2d 902, 910 n. 5 (Pa.Super. 2008).

Brown alleges that the trial court erred in denying his petition without a hearing. He claims that if the court had held a hearing, he would have presented evidence that the Department of Corrections does not have licensed hospices, as well as the testimony of hospice representatives about the care they would give to Brown. He further points out that Section 9777 allows placement in a home for hospice care and that he proposed a new location in his motion for reconsideration. *See* Brown's Br. at 27 (citing 42 Pa.C.S.A. § 9777(g)). Brown also maintains that the court erroneously relied on *Folk*, because unlike *Folk*, he allegedly has met all factors under Section 9777(a)(2).

Section 9777 permits an inmate to petition the court to "temporarily defer service of the sentence of confinement and temporarily remove the inmate committed to the custody of the department, or other facility, for placement in a hospital, long-term care nursing facility or hospice care location." 42 Pa.C.S.A. § 9777(a). Relevant here, Section 9777(a)(2) permits a court to approve an inmate's request for temporary deferral of confinement "to receive care from a licensed hospice care provider, proposed by the petitioner and subject to electronic monitoring by the department," if the inmate by clear and convincing proof establishes all the following:

> (i) The inmate is terminally ill, not ambulatory and likely to die in the near future.
>
> (ii) The licensed hospice care provider can provide the inmate with more appropriate care.

(iii) Appropriate medical care and palliative and supportive services will be provided by the licensed hospice care provider at the proposed hospice care location.

(iv) The placement of the inmate in the proposed, licensed hospice care location does not pose an undue risk of escape or danger to the community. In making this determination, the sentencing court shall consider the inmate's institutional conduct record, whether the inmate was ever convicted of a crime of violence, the length of time that the inmate has been imprisoned and any other factors the sentencing court deems relevant.

(v) The licensed hospice care provider has agreed to notify the department and the sentencing court of any material changes in the health status of the inmate, the nature of the hospice care provided or other information required by the department or the sentencing court.

(vi) Each agency representing the Commonwealth at a proceeding which resulted in an order committing or detaining the inmate, the State or local correctional facility housing the inmate and any registered crime victim have been given notice and an opportunity to be heard on the petition.

*Id.* at § 9777(a)(2). A hospice care location is "[a] home, independent living environment or inpatient setting that provides a coordinated program of palliative and supportive services through a licensed hospice care provider."

*Id.* at § 9777(g) (**"Hospice care location"**). Where the petitioner fails to satisfy every prong of Section 9777(a), no hearing is required. *See Folk*, 40 A.3d at 174.

The trial court determined that Brown had failed to satisfy the fourth factor under Section 9777(a)(2), regarding whether his placement in hospice may pose an undue risk of escape or danger to the community. It concluded:

Here, [Brown's] petition proposed placement at home, merely being visited by hospice care providers and not

- 8 -

placement at a "licensed hospice care location." Further, and more notably, was the proposed placement specified in the petition of [Brown] living at his home with [Brown's] wife. The facts of this care involve [Brown] engaging in heinous sex crimes against children. The victim in this case testified that [Brown's] wife not only covered up for crimes of [Brown] but punished the victim for bringing the crimes to light. Victim testified that [Brown's] wife, "[P]ulled us by our hair and then she locked us in a room with a dog." May 18, 2021 Trial Tr., page 33. Further, [Brown's] wife accused the victim of "lying." May 18, 2021 Trial Tr., page 33.

This [c]ourt found that [Brown] living at his home, in the same place the crimes were committed, with the same "supervisor" that physically harmed [Brown's] victims and locked them in a room with an animal, could not on its face satisfy the statutory requirement that the placement keep the community safe from harm; that the proposed placement was not a "licensed hospice care location"; and that therefore [Brown's] proposed placement with his wife failed to satisfy, on its face, a required prong of the statutory considerations.

1925(a) Op. at 5-6. The court added that a hearing is not absolutely required for a Section 9777 petition. The court explained that, if the Section 9777 petition fails to state a *prima facie* case for release, the court may deny the petition without a hearing. *Id.* at 6-7 (citing **Folk**, 40 A.3d at 174).

We conclude that the trial court did not abuse its discretion in denying Brown's petition without a hearing. Brown failed to set forth a *prima facie* case or show a genuine issue of material fact necessitating a hearing. The relevant facts are undisputed. Even assuming that a private residence can be a "home, independent living environment or inpatient setting that provides a coordinated program of palliative and supportive services through a licensed hospice care provider," the trial court concluded that Brown's release to his

wife's home would pose an undue risk of escape or danger to the community. This conclusion is supported by the record facts relating to the underlying crimes. *See Brown*, 2024 WL 5205587, at *1-*2.

Additionally, even considering that Brown proposed a new location in his motion for reconsideration, Brown did not offer evidence that UPMC would provide appropriate medical care as well as palliative and supportive services at that location. The court permissibly exercised its discretion in denying the petition without a hearing. *See Folk*, 40 A.3d at 174 (affirming order denying petition for modification of sentence due to alleged illness where petitioner failed to satisfy at least three factors under Section 9777(a)(2)); 42 Pa.C.S.A. § 9777(a)(2) ("[t]he sentencing court *may* approve . . . if *all* of the following are established by clear and convincing proof") (emphasis added). On this record, we cannot find an abuse of discretion.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/16/2025